**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD SHAVER, WILLIAM WHITNEY, JOE FEDELE, RALPH RIBERICH AND ANTHONY KATZ<br><br>On behalf of themselves and others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>SIEMENS CORPORATION, SIEMENS WESTINGHOUSE RETIREMENT PLAN FOR UNION EMPLOYEES AND SIEMENS WESTINGHOUSE RETIREMENT PLAN<br><br>Defendants. | ) | Case No. 02-1424<br><br>Honorable David S. Cercone<br><br>Magistrate Judge Ila Jeanne Sensenich<br><br>Electronically Filed |

**DEFENDANTS' MOTION TO CERTIFY THE COURT'S MARCH 29 MEMORANDUM ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## I. INTRODUCTION

On March 29, 2007, this Court awarded summary judgment to plaintiffs on their claims that defendants violated sections 204(g) and 208 of ERISA. *See* Memorandum and Order at 1, 9. At the same time, the Court denied defendants' motion for summary judgment on the issue of waiver, finding the factual record insufficiently developed to determine whether the plaintiffs who signed releases had validly waived their claims under ERISA. *Id.* at 21. As a result, lengthy further proceedings will be necessary to determine which plaintiffs, if any, should recover.

In light of this prospect, defendants respectfully request that the Court certify its March 29 order for interlocutory appeal under 28 U.S.C. § 1292(b). The ERISA claims resolved in that

order involve "controlling question[s] of law as to which there is substantial ground for difference of opinion," the prerequisite for interlocutory appeal established by Section 1292(b). Indeed, the Magistrate Judge observed in the Report and Recommendation that these questions raise a "complex issue of fist impression," while this Court recognized that a district court in Alabama rejected ERISA claims regarding the very plan at issue here. Further, there can be no doubt that prompt resolution of these questions by the Third Circuit will "materially advance the termination of the litigation." *Id.* No further proceedings before this Court would be necessary if the case went forward on interlocutory appeal and the Third Circuit rejected ERISA liability. In contrast, if appeal is taken only after a final judgment, protracted additional litigation, burdening both the parties and the Court, will be unavoidable. Certification is thus warranted under Section 1292(b) to allow the Third Circuit to determine promptly whether the case need advance to the stage of individualized fact-finding.

## II. ARGUMENT

The Court is already familiar with the facts and procedural history of this case. Accordingly, these will not be recounted, save where relevant to the applicability of Section 1292(b).

Section 1292(b) provides in relevant part that,

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

The requirements for certification of an interlocutory appeal under this provision are thus threefold: (1) the order at issue must "involve a controlling question of law;" (2) there must be "substantial ground for difference of opinion" on that question; and (3) the certifying court must

find that prompt appeal of the order "may materially advance the ultimate termination of the litigation." *See generally* Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3930 (2d ed. 1996 & Supp. 2006). All three of these requirements are met with respect to this Court's March 29 order.

### A. This Court's Application Of ERISA Sections 204(g) And 208 Involves Controlling Questions Of Law

The Third Circuit has indicated that an issue is "controlling" under Section 1292(b) if it is one that, if wrongly decided in the district court, "would result in a reversal of a judgment after final hearing" in the court of appeals. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir. 1974) (en banc). The questions in this case regarding application of ERISA sections 204(g) and 208 satisfy that standard. Indeed, the Magistrate Judge's opinion, as adopted and modified by this Court, makes clear that the finding of ERISA liability rests on several independent legal determinations, each of which is a "controlling question of law."

First, the Court found that a "transfer of plan liabilities" had occurred, as a matter of law, when Siemens entered into the Asset Purchase Agreement ("APA") with Westinghouse. *See* Magistrate Judge's Report and Recommendation ("Report and Recommendation") at 13 (December 13, 2005) ("As a general matter, the contractual obligation to provide substantially identical benefits to the transferring employees can be construed to be a transfer of Plan liability."); Memorandum Order at 3-4. A finding that liability had been transferred was necessary for the spin-off provision of ERISA § 208 to apply. *See* Report and Recommendation at 10. Next, the Court found that the PJS benefits sought by plaintiffs were an "accrued benefit of a plan participant" under ERISA § 204(g)(1). Report and Recommendation at 18. This in turn required a subsidiary finding that PJS benefits were available to plaintiffs at all times preceding the effective date of the Siemens plans. The Court therefore made the legal

determination that plaintiffs were covered by a "transition plan" for the period "after the asset sale had occurred, but before the Siemens Plans were made effective." *Id.* at 22. *See* Memorandum Order at 6-8. Finally, the Court found that Siemens had impermissibly reduced plaintiffs' benefits under ERISA § 204(g) by "allowing Siemens employees to receive benefits under the Westinghouse Plan which contained the sunset clause" that eliminated the PJS benefits. Report and Recommendation at 28. *See* Memorandum Order at 2.

It was only after making this series of independent determinations, each of which involved resolution of underlying questions of law, that the Court awarded summary judgment to plaintiffs. Because each of these determinations was a necessary precondition for establishing defendants' liability under ERISA, reversal of any one of them on appeal would mandate reversal of this Court's order and dismissal of the case. As such, each determination represents a "controlling question of law" under the *Katz* standard.

### B. There is Substantial Ground For Difference Of Opinion As To Each Of The Court's Legal Determinations

Defendants' arguments as to each of the issues described above – and the grounds for disagreeing with the Court's conclusions – are set forth in the Objections to the Magistrate's Report and Recommendation that defendants filed with the Court. Although the Court rejected defendants' arguments, they are sufficiently colorable to offer "substantial ground for difference of opinion" concerning each of the legal conclusions recommended by the Magistrate Judge and adopted by this Court. It has long been understood that, when the issues are novel and there are grounds for disagreement, district courts will certify an order for appeal even though "in the court's mind there does not exist the strong possibility that the [order] was incorrect." *Brown v. Texas & Pac. R.R.*, 392 F. Supp. 1120, 1126 (D. La. 1975). There are such reasonable grounds for disagreement here about the proper resolution of the dispositive issues. Indeed, the

Magistrate Judge recognized that the application of ERISA sections 204(g) and 208 to the facts of this case involves "issues of first impression" and emphasized that the interplay between these two statutory provisions is likewise a "complex issue of first impression." Report and Recommendation at 10, 34. District courts in this Circuit have found that the presence of a question of first impression weighs in favor of certifying an interlocutory appeal under Section 1292(b). *See, e.g.*, *Chase Manhattan Bank v. Iridium Africa Corp.*, 324 F. Supp. 2d 540, 545 (D. Del. 2004); *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 235, 236 (D. Del. 1987).

Moreover, this Court itself indicated that at least one of the conclusions that is essential to its holding is subject to debate. As the Court observed, defendants' challenge to the existence of a "transitional" ERISA plan that existed between the asset sale date and the closing date "is not without some appeal." Memorandum Order at 6. In fact, the Court found conflicting precedent on the precise question presented in this case: whether the Siemens/Westinghouse agreement gave rise to a "transitional" plan. As the Court recognized, "at least one court has rejected the notion that the thirteen day arrangement changed any aspect of the respective employers' defined benefit plans, thereby implicitly suggesting that no ERISA protections were implicated by the transaction." *Id.* (citing *McCay v. Siemens Corp. et al.*, No: 2:01cv230-VEH (March 29, 2006 N.D. Ala.)). *See McCay*, slip op 13-14 ("as a matter of law," "Plaintiffs' arguments that liability under ERISA exists because of the merged status of the [Westinghouse] and Siemens Plans are without merit, including the purported violations of the ERISA spinoff and anti-cutback rules"). Almost by definition, this conflicting authority provides "substantial grounds for difference of opinion" as to this issue. *See Oyster v. Johns-Manville Corp.*, 568 F. Supp. 83, 86 (E.D. Pa. 1983) ("[A] substantial ground for difference of opinion may be demonstrated by adducing conflicting and contradictory opinions of courts which have ruled on the issue." (internal

citations omitted)). Because reversal on this issue alone would entirely relieve defendants of liability and render further proceedings unnecessary, interlocutory review is warranted.

### C. Prompt Appellate Resolution Would Materially Advance The Termination Of This Case

The Court denied defendants' motion for summary judgment on the issue of waiver, finding the factual record insufficiently developed to determine whether the plaintiffs who signed releases had validly waived their ERISA claims. In so doing, the Court described the multi-factor standard governing waiver of accrued benefits under ERISA. *See* Memorandum Order at 19-20. Because application of this standard requires consideration of a detailed range of factors that vary according to each plaintiff's particular circumstances, extensive factual development will be needed to sort out defendants' liability (if any) to each individual. The parties will have to gather evidence concerning the "education and sophistication of" each affected plaintiff, the "clarity of the agreement," the "amount of time [each plaintiff was] given to consider the [releases]," "[w]hether independent advice, such as that of counsel, was available to" signatories, and "[t]he amount of consideration received in exchange for the release or waiver." *Id.* at 19-20. Applying a two-step burden-shifting process, the Court will then have to make individualized determinations as to whether this evidence supports a finding of waiver for each plaintiff who signed a release. This process will have to be repeated numerous times: as the Magistrate Judge observed, "two hundred of the two hundred and thirty class members signed releases." Report and Recommendation at 36. As a consequence, this fact-finding exercise would be a substantial undertaking that will require investment of significant resources by the parties and much time by the Court.

It is thus inevitable that lengthy rounds of additional discovery and evidentiary hearings will be needed before the Court can return a final judgment. Yet if the Third Circuit overturns

that final judgment because ERISA liability was lacking in the first place, these further factual proceedings all will have been entirely unnecessary. And this is precisely the state of affairs that Section 1292(b) was designed to avoid. The statute's principal purpose is to guard against "a wasted protracted trial if it could be early determined that there might be no liability." *Katz*, 496 F.2d at 754. Section 1292(b) should therefore be applied to avoid "possible wasted trial time and litigation expense" (*id.* at 756), with the understanding that "saving of time of the district court and of expense to the litigants was deemed by the sponsors [of the statute] to be a highly relevant factor." *Id.* at 755. In light of these statutory mandates, district courts in this Circuit have not hesitated to certify interlocutory appeals when doing so would "conserve the resources of the judiciary and the parties." *Chase Manhattan Bank*, 324 F. Supp. 2d at 545-46. Certification would clearly achieve these ends here.

### D. The Court Should Amend Its Order To Certify It For Interlocutory Appeal

If the Court agrees that interlocutory appeal is appropriate because the case satisfies the three elements of Section 1292(b), it would be appropriate for the Court to certify its March 29 order for immediate appeal. Because Section 1292(b) contemplates that the certification will appear in the same order from which the appeal is taken (providing that, when the district judge concludes that interlocutory appeal is appropriate, the judge "shall so state in writing in such order"), the proper course would be for the Court to issue an amended order expressly stating that the requirements of Section 1292(b) are satisfied. Issuance of such an amended order is explicitly contemplated by the Federal Rules, which provide that, "[i]f the party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement." Fed. R. App.

P. 5(a)(3). It therefore is common practice for the district courts to amend an order to include certification for interlocutory appeal if the order as initially issued did not include certification. *See, e.g., Mineo v. Port Authority of New Jersey and New York*, 779 F.2d 939, 942 & n.7 (3rd Cir. 1985). Such a course would be appropriate here.

## III. CONCLUSION

For the reasons given above, defendants request that the Court amend its March 29, 2007, order to certify that the conditions for interlocutory appeal set forth in Section 1292(b) are satisfied.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By: s/*Maria Greco Danaher*
Maria Greco Danaher (Pa. I.D. No. 47036)
Two PPG Place, Suite 400
Pittsburgh, PA 15222
(412) 281-7272

Dana L. Rust (admitted pro hac vice)
Robert F. Holland (admitted pro hac vice)
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000

*ATTORNEYS FOR DEFENDANT*