# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD SHAVER, WILLIAM J. WHITNEY, JOE FEDELE, RALPH RIBERICH** and **ANTHONY P. KANZ,** on behalf of themselves and others similarly situated, | ) ) ) ) ) | **2:02cv1424** **Electronic Filing** |
| Plaintiffs, | ) ) ) | Judge David S. Cercone Magistrate Judge Sensenich |
| vs. | ) ) | |
| **SIEMENS CORPORATION**, and **SIEMENS WESTINGHOUSE RETIREMENT PLAN FOR UNION EMPLOYEES,** and **SIEMENS WESTINGHOUSE RETIREMENT PLAN**, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Presently before the court is plaintiffs' motion for entry of a final remedial order for non-release class members and the parties' submissions in conjunction therewith. For the reasons set forth below, the motion will be granted in part and denied in part.

The parties' submissions essentially raise all of the issues presented to Magistrate Judge Hay and addressed in her March 17, 2006, Report and Recommendation issued in <u>Pieseski v. Northrop Grumman Corp. and Northrop Grumman Electronic Sensors & Systems Division Pension Plan, et. al</u>, 2:01cv933 (Doc. No. 123 in 2:01cv933; reproduced at Doc. No. 114-3 in this action), which Report and Recommendation was adopted by Judge McVerry by order issued on June 30, 2006 (Doc. No. 130 in 2:01cv993; reproduced at Doc. No 114-4 in this action). We have considered the arguments presently being pressed by counsel in this action and are convinced that to the extent the underlying issues giving rise to those arguments were addressed by Magistrate Judge Hay, her recommendations on those issues and the reasoning she provided in support thereof are persuasive and should be followed as to the matters currently before this member of the court. Accordingly, for the reasons Magistrate Judge Hay set forth in her March

17, 2006, Report and Recommendation, we follow her recommendations on the following issues: plaintiffs' request for retiree medical and life insurance benefits; defendants' request for a set-off for severance benefits paid at the time of separation; and plaintiffs' request for pre-judgment and post-judgment interest.[1]

This leaves for consideration (1) defendants' contentions concerning (a) the court's authority to award relief to plaintiffs given the nature of plaintiffs' claims, (b) whether the elimination of the PJS benefits in the Siemens' plans should be recognized as effectuating the cessation of all future accruals of PJS benefits, and (c) whether all individuals who did not sign a release properly are included in the relief provided by the court's remedial order; and (2) plaintiffs' request that the remedial award include provisions for a common fund recovery of attorneys fees and costs. Each of these matters are discussed below.

Defendants' contention that Eichorn v. AT&T Corp., 484 F.3d 644 (3d Cir. 2007), precludes the entry of any monetary remedy in the instant setting is unavailing. The situation in Eichorn is distinguishable. There, the employees sought to enforce their pension plan's "bridging rights, under which a participant who left employment could return within six months and 'bridge' the interim term of employment, receive pension credit for all prior service and continue to accrue pension benefits as if he never left." Id. at 647. The plaintiffs claimed that

---

[1] Briefly stated, plaintiffs' request for retiree medical and life insurance benefits will be denied because any such benefits are not protected under the provision of ERISA entitling plaintiffs to relief: 29 U.S.C. § 1054(g), and plaintiffs' claim for PJS benefits properly is understood as a claim seeking to reform a plan to recognize rights protected under ERISA; defendants are entitled to deduct as a set-off the amount of severance benefits paid to plaintiffs at the time of termination: the interim plan contained such a provision, and in equity the restoration of that provision is appropriate because it would have been retained had defendants not eliminated the PJS benefits entirely and the amount paid in severance benefits would have been reduced or eliminated by the enhanced benefits provided by the accrued PJS pension; and pre-judgment and post-judgment interest will be awarded in accordance with the rate found in 28 U.S.C. § 1961 because plaintiffs have not identified a sound basis that warrants the use of a higher rate and it appears that the use of the Treasury Bill rate is sufficient to make plaintiffs whole and prevent unjust enrichment.

2

by establishing a "no-hire" policy and including it the sales agreement governing the sale of the company, which policy/agreement precluded the plaintiffs from being employed at any other division of the employer if they left the employment of the division being sold, the employer had interfered with their bridging rights and their ability to attain pension benefits in conjunction therewith. Id. at 650.  They sued under Section 510 of ERISA, 29 U.S.C. § 1140, and sought "a decree from the District Court requiring [the employer] to adjust its pension records retroactively to create an obligation to pay the plaintiffs more money, both in the past and going forward." Id. at 655.  The district court characterized plaintiff's request for relief as a request for compensatory damages merely framed as an "equitable injunction" and concluded the relief was beyond the scope of remedies available under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Id.

Unlike the situation in Eichorn where the plaintiffs sought to undo the impact of a company hiring policy on the company's pension records through a retroactive revision of those records and an award of back due benefits in conjunction therewith, plaintiffs here are seeking to be restored to the benefits they are entitled to receive and would have been receiving had defendant properly recognized their entitlement to the PJS pension benefits.   Restoration of plaintiffs' accrued PJS pension benefits is for work previously performed under the defendants' pension plans, which are subject to reformation due to defendants' statutory violation in creating and administering those plans.  Like the situation in Varity Corp. v. Howe, 516 U.S. 489 (1996), the court's decree in such a situation properly is understood as "a matter of restoring the plaintiffs' benefits enrollment to the preexisting arrangement," which arrangement existed while the work was performed. Eichorn, 484 F.3d at 656 (distinguishing between a decree restoring a plaintiff to benefits that were available and earned during the employee's work but for the employer's statutory violation and the situation in Eichorn where the benefits were never earned because of the employer's unlawful interference).   Furthermore, plaintiffs are entitled to relief as a class and the relief they seek properly can be measured against defendants' gain.  A "make-whole" remedy for defendants' statutory violation necessarily has as components a restoration to

3

the benefits defendants should have been paying since plaintiffs' separation from employment and a recognition of their entitlement to those restored benefits into the future. Relief for back due benefits in such a setting has long been recognized as a form of restitutionary reimbursement that is appropriate as part of the equitable decree and a return to the true status quo mandated by ERISA. Eichorn, 484 F.3d at 656 (distinguishing between the situation in Eichorn where the defendant had not improperly denied or withheld benefits as part of its ERISA violation, thus reducing the only measure of recovery to that of plaintiff's lost opportunity to obtain benefits, which was akin to lost wages or a contract claim for past due wages, and the situation where monetary relief is appropriate restitution in equity such as in Varity where "court's decree was a matter of restoring the plaintiffs' benefits enrollment to the preexisting arrangement, thus undoing the effects of the defendants' [statutory violation]."); accord In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 57 F.3d 1255, 1264 (3d Cir.1995) ("[T]he retirees are not entitled to money damages for a breach of fiduciary duty. Instead, [they] seek an injunction ordering specific performance of the assurances ... made [by the employer], restitutionary reimbursement for back benefits, and restoration of the status quo ante for [certain] retirees by rescinding their retirement agreements. These are remedies which are restitutionary in nature and thus equitable...."); Luckasevic v. World Kitchen, Inc., 2007 WL 2683995 (W.D. Pa., September 7, 2007) (Report and Recommendation of Magistrate Judge Caiazza) (construing request for injunctive relief restoring plaintiffs to the position they would occupy but for the deceit of the defendants in breach of fiduciary duty case as equitable in nature and distinguishing Eichorn on the grounds that the plaintiffs were seeking a recovery for benefits assertedly earned while working for the employer, the relief could be measured by defendants' gain because the infringing plan had been adopted to save the defendant money and purported to eliminate a class of benefits that were available to the plaintiffs, and the Eichorn court was "careful to clarify that 'an ERISA plaintiff's demand for money [does not] necessarily require[ ] the conclusion that the relief sought is not 'equitable' within the meaning of the statute,' id. at 655 n. 6; nor did the court

purport to overrule Unisys I's discussion of the equitable relief available under circumstances materially similar to those presented here.") (adopted, Cercone J.)). Consequently, defendants' position that they are free to eliminate accrued benefits from a plan in violation of ERISA and then avoid any liability during the period on time consumed in obtaining a restoration of those benefits because such relief would be inconsistent with the traditions of equity must be rejected.[2]

Defendants' argument that its elimination of PJS benefits in the Siemens' plans should be construed as limiting the accrual of PJS benefits to those earned as of August 31, 1998, or as eliminating the future accrual of such benefits after September 1, 1998, also is misplaced. Defendants' position fails to acknowledge the nature of the benefit that accrued as of August 31, 1998, as recognized by both Chief Judge Ambrose in Bellas v. CBS, Inc., 73 F. Supp.2d 500 (W.D. Pa. 1999) and Judge Greenberg in Bellas v. CBS, Inc., 221 F.3d 517 (3d Cir. 2000). Among other components, the PJS benefits provide for an increase in the employee's normal retirement pension without any actuarial reduction, and this increase in the employee's normal retirement continues for the lifetime of the employee. Bellas, 73 F. Supp.2d at 508-09; Bellas, 221 F.3d at 538. Thus, the component of the PJS benefit that is not actuarially reduced is "a retirement-type subsidy" within the meaning and protection of Section 204(g) of ERISA. Id. The benefit accrues upon its creation by the plan sponsor and is protected from cutback or elimination thereafter. Bellas, 73 F. Supp.2d at 509; Bellas, 221 F.3d at 532 ("Such benefits are accrued upon their creation rather than upon the occurrence of the unpredictable contingent event."). The remaining components, "*i.e.* that portion [of the PJS pension benefits] paid that is equal to the actuarially reduced normal retirement benefit, constitutes an early retirement benefit protected by section 204(g) but is not a retirement-type subsidy." Bellas, 221 F.3d at 538. These

---

[2] Defendants' alternative ground for "reconsideration" of the March 29, 2007, Memorandum Order equally is unavailing. The *ipse dixit* rationale of the court in McCay v. Siemens Corp., No. 06-12346 (11th Cir. July 25, 2007) (reproduced at Doc. No. 112-2), is hardly an insightful legal analysis of the issues raised and addressed in this litigation and is inconsistent with the guiding precedent utilized in the Memorandum Order.

5

benefits likewise are protected to the extent they continue for the lifetime of the participant. Id. at 540.  Because such benefits are protected from cutback or elimination after they accrue, participants acquiring such benefits are entitled to grow into their full value. Bellas, 73 F. Supp.2d at 509 (citing Dade v. North American Philips Corp., 68 F.3d 1558, 1562 (3d Cir. 1995); Bellas, 221 F.3d at 534 -35.

To be sure, Siemens did possess the ability to modify or eliminate at least some of the future accrual of benefits received pursuant to the PJS pension benefits.  But any such amendment could not reduce or eliminate what had accrued upon the creation of those benefits and was protected under ERISA's anti-cut back provision.  Thus, any such amendment could not have reduced the crediting of age or years of service toward the amount that was payable for the lifetime of the employee.  Nor could it have limited the accrued benefits to those due as of August 31, 1998.   Instead, such an amendment could only have eliminated that portion of the PJS benefit that is not protected by section 204(g): those benefits that were payable only to and do not "continue beyond normal retirement age."  Bellas, 221 F.3d at 540.

And contrary to plaintiffs' contentions, there is nothing improper in recognizing the full legal effect of the  adoption of the Siemens plans, effective September 1, 1998.  We agree with defendants that in crafting a remedy, the court "should honor, as much as is permitted by the statutory requirements of ERISA, the plan sponsor's intent."  Defendants' Memorandum on Relief  (Doc. No. 107) at 8.  The guiding principles of trust law and equity as they apply to ERISA require as much.

As plan sponsor, Siemens made clear that it was eliminating the PJS benefits as of September 1, 1998, to the extent it was permitted to do so as a matter of law.  This would include the elimination of all PJS benefits which are not protected by section 204(g).  Under Bellas, Siemens was entitled to eliminate that portion of the benefits that were plant shut-down type benefits and continued only to the age of normal retirement, i.e., those benefits  in subsections 20.B.2(b) & (c) of the Westinghouse plan as set forth in Bellas, 221 F.3d at 519-20.   It follows

6

that the remedial relief must be limited to that portion of the PJS benefit which is protected from elimination or reduction under ERISA and the established violation thereof. Paragraph 4 of the court's remedial order has been crafted to have precisely that effect.[3]

Defendants' request for clarification of certain class members' eligibility in the court's remedial order is premature; given the nature of the claim before the court and its limited authority to award relief, it is not the court's prerogative to interpret whether the specific circumstances of the eight individuals identified by defendants warrant the denial of benefits under the reformed plan reflected in the court's remedial order. Such matters fall within the purview of the plan administrator in the first instance. Accordingly, the plan administrator must evaluate these non-release class members' circumstances and make a determination was to whether each of these individuals meet the pre-amendment conditions for participation in the plan.[4]

---

[3] Siemens also may have been able to reduce the future accrual of the normal retirement amount that was actuarially reduced by stopping or lowering future defined contributions for all retirement benefits and freezing participation in its pension plans. The record does not demonstrate that it did so and the changes reflected in the September 1, 1998, Siemens plans cannot be read as intending to bring about such a result.

[4] This approach is consistent with the court's remedial order. Monetary relief is provided in the form of back due benefits only for those non-release class members that have satisfied the pre-amendment conditions for the PJS Pension. It is not within the scope of this litigation to determine whether each particular member satisfied all pre-requisites necessary for receipt of the enhanced pension benefits, i.e., whether the individual was a participant in the transitional plan, had the requisite age and years of service at the time of separation, was separated under circumstances that meet the definition of a permanent job separation and so forth. Such an undertaking is appropriate for the plan administrator, and a participant assertedly aggrieved by that process would be entitled after exhausting all administrative remedies to review in this court pursuant to a benefits claim brought under 29 U.S.C. § 1132(a)(1)(B). A claim of this nature is not before the court and is beyond the scope of the relief being awarded. The court's remedial order recognizes this by entering judgment only for those class members "who did not sign a release and who satisfied on the date of termination the pre-amendment conditions for the PJS Pension...." The eight individuals are entitled to the review process that will be necessary to carry out this remedial relief as members of the class who ostensively qualify for the PJS pension benefit and did not sign a release. And like any other member their entitlement to benefits is dependant upon satisfactory compliance with each requirement subsumed in the court's order.

7

Finally, it is appropriate to direct that thirty percent of all back due benefits paid in carrying out the implementation of the remedial order be set aside for potential use as a common fund recovery, should the court ultimately determine that such an award is appropriate. Of course, no petition for such an award has been filed and the court is not in a position to make a determination of whether such an award is warranted at this time. It is enough to recognize that at least in some circumstances a common fund award may be appropriate under ERISA, see e.g. In re Unisys Corp. Retiree Medical Benefits ERISA Litigation, 886 F. Supp. 445, 456 (E.D. Pa. 1995), and until the record is fully developed on the issue of fees and costs the court will not be in a position to determine whether such an award is appropriate in this case. Consequently, it is necessary to reserve a percentage of the payout for back due benefits for potential use in the future.

Date: March 28, 2008

                                                  s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    John T. Tierney, III, Esquire
David P. Rodes, Esquire
Robin M. Graziano, Esquire
Theodore Goldberg, Esquire
Goldberg Persky & White, PC
1030 Fifth Avenue, Third Floor
Pittsburgh, PA 15219

William T. Payne, Esquire
1007 Mt. Royal Boulevard
Pittsburgh, PA 15223

Frederick W. Bode, III, Esquire
Thomas H. May, Esquire
Dickey McCamey & Chilcote, PC
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402

Robert Holland, Esquire
Dana L. Rust, Esquire
David F. Dabbs, Esquire
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219